# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 15-234V
Filed: July 6, 2015
Not to be Published

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |  |
|---|---|---|
| MARY AXELSON, on Behalf of her Minor Child, A.A., | \* | |
| | \* | |
| | \* | |
| Petitioner, | \* | Petitioner's Motion for Decision |
| | \* | Dismissing her Petition granted; |
| v. | \* | Gardasil; cognitive issues, postural |
| | \* | orthostatic tachycardia syndrome |
| SECRETARY OF HEALTH | \* | (POTS), chronic migraines, weakness, |
| AND HUMAN SERVICES, | \* | dizziness, confusion, memory loss, |
| | \* | photophobia, anxiety, weakness. |
| Respondent. | \* | |
| | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Andrew W. Downing, Phoenix, AZ, for petitioner.
Debra A. Filteau Begley, Washington, DC, for respondent.

**MILLMAN, Special Master**

## DECISION[1]

On March 6, 2015, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that three human papillomavirus ("Gardasil") vaccinations her daughter A.A. received on March 2, 2012, May 3, 2012, and October 8, 2012, caused A.A. cognitive issues, postural orthostatic tachycardia syndrome ("POTS"), chronic migraine, allodynia, weakness, dizziness, confusion, memory loss

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioners have 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the categories listed above, the special master shall redact such material from public access. Due to the highly personal nature of the information in petitioner's medical records, the undersigned sua sponte is redacting petitioner's name to his initials. Therefore, a motion to redact is moot.

photophobia, anxiety, and stomach problems.  Although petitioner also alleges Gardasil activated in A.A. a latent Bartonella virus, Pet. ¶ 2, the medical records do not support a diagnosis of Bartonella.  Moreover, Bartonella is a bacterium, not a virus.

In addition, A.A.'s cardiologist changed A.A.'s diagnosis from POTS to vasovagal syncope.  The undersigned ruled in Turkupolis v. Sec'y of HHS, No. 10-351V, 2014 WL 2872215 (Fed. Cl. Spec. Mstr. May 30, 2014), that Gardasil vaccine does not cause vasovagal syncope.

The undersigned, having reviewed the medical records, does not find they support petitioner's allegations since all of A.A. symptoms began before her Gardasil vaccinations.  The undersigned cannot rule in petitioner's favor based solely on her allegations unsupported by medical records or medical opinion.  42 U.S.C. § 300aa-11(a)(1).

The United States Supreme Court ruled that a vaccination cannot cause an illness whose onset occurs before the vaccination in Shalala v. Whitecotton, 514 U.S. 268, 274 (1995) ("There cannot be two first symptoms or onsets of the same injury.").  Therefore, petitioner's only option was to prove that Gardasil vaccine significantly aggravated A.A.'s numerous illnesses.  In § 300aa-33(4), the Vaccine Act defines "significant aggravation" as follows: "The term 'significant aggravation' means any change for the worse in a preexisting condition which results in markedly greater disability, pain, or illness accompanied by substantial deterioration of health."

However, no medical records support significant aggravation of A.A.'s preexisting illnesses.  A.A.'s current condition seems to be a consequence of her and her mother's failure to follow various doctors' recommendations for adequate fluid and sodium intake, and failure to be evaluated by various qualified medical doctors for Sensory Processing Disorder and Asperger's Syndrome.  Because A.A. and her mother refused to have A.A. evaluated and treated for Sensory Processing Disorder, A.A. has withdrawn from the world and, together with her mother, lives at home.

The undersigned issued an Order detailing these problems on May 5, 2015.  On May 7, 2015, the undersigned held a telephonic status conference with counsel to discuss the contents of this Order.  On July 6, 2015, petitioner filed a Motion for a Decision Dismissing Her Petition, stating "an investigation of the facts and science supporting the case as medical records were received has demonstrated to [p]etitioner that she will likely be unable to prove that she is entitled to compensation in the Vaccine Program."  Pet'r Mot. at ¶ 3.  In addition, petitioner states "to proceed further would be unreasonable and would waste the resources of the Court the [r]espondent, and the Vaccine Program."  Id. at ¶ 4.

The undersigned **GRANTS** petitioner's motion and **DISMISSES** this case.  The telephonic status conference previously set for July 20, 2015 is hereby cancelled.

## FACTS

### Pre-vaccination records

A.A. was born on February 28, 1999.

On August 31, 2007, A.A. saw pediatrician Dr. Sarah Humphreys, complaining of headache, fussiness, photophobia, and phonophobia intermittently for three days.  Med. recs. Ex. 10, at 112.  She also had an upset stomach and vomited the day before.  Id.  That morning, A.A. was completely fine and then threw a huge tantrum afterward.  Id.  A.A. reported that she was confused.  Id.  She also said she could not stand, which lasted for one-half hour.  Id.  She complained of dizziness.  Id.  Her father helped her to stand and she did not vomit at all.  Id.  Dr. Humphreys' diagnosis was intermittent headache.  Id. at 113.  Per A.A.'s parents, A.A.'s confusion happened frequently when she was ill.  Id.

On November 20, 2007, A.A. saw pediatrician Dr. Jody L. Mathie, complaining of headaches.  Id. at 123.  A.A. had throbbing, temporal (and all over her head) headaches at random times with photosensitivity, and auditory and touch sensitivity.  Id.  The only known trigger was a lit screen in a dark room and sometimes reading.  Id.  That year, A.A. had an increasing frequency of severe headaches.  Id.  Bad headaches caused A.A. emesis (vomiting).  Id.  A.A.'s headaches frequently lasted overnight.  A lack of fluids occasionally triggered her headaches.  Id.  In addition, possible low glucose also triggered them.  Id.  A.A.'s parents felt there were multiple triggers of A.A.'s headaches.  Id.  Dr. Mathie diagnosed A.A. with classic migraine and referred her to a neurologist for evaluation and diagnosis.  Id. at 126.

On February 12, 2008, A.A. saw pediatrician Dr. Lynn Andrews, complaining of episodes of shortness of breath.  Id. at 116.  She had an episode the day before while walking to school.  Id.  A.A. had had intermittent episodes of shortness of breath over the last six to nine months, usually when walking or sitting still.  Id.  The episodes lasted a few minutes.  Id.  The family moved to a new house and A.A. started attending a new school a few months ago.  Id.  A.A. had been very stressed and sad about the move.  Id.  The presumptive diagnosis was generalized anxiety disorder.  Id.  Dr. Andrews said that A.A. might need to see a counselor.  Id.

On September 17, 2010, A.A. saw pediatrician Dr. Mathie.  Id. at 66.  A.A.'s parents were concerned about her extreme sensitivity to pain.  Id.  They also noted that A.A. was "VERY" (Dr. Mathie's capitalization) sensitive to touch and Dr. Mathie wondered if A.A. had Sensory Integration Disorder.  Id.  A.A. had a concussion in October 2010.  Id. at 67.  Her symptoms seemed related to stress.  Id.  When Dr. Mathie examined A.A., she was very sensitive to touch, complained of discomfort often, had a low pain threshold, and said "Ow" a lot during most of the examination.  Id.  Dr. Mathie diagnosed A.A. with likely Sensory Integration Disorder of some type.  Id.

On December 6, 2010, petitioner saw pediatrician Dr. Stacey L. Macfarlane.  Id. at 60.  A.A.'s mother raised her concern about A.A.'s shortness of breath when walking.  Id.  Three

times out of four, when A.A. walked, she complained of headache, fatigue, and shortness of breath.  Id.  A.A. had a history of shortness of breath for two to three years.  Id.  Dr. Macfarlane's diagnosis was likely behavioral reason or vocal cord dysfunction (VCD).  Id. at 62.

On February 4, 2011, A.A. saw pediatrician Dr. Mathie, complaining of buzzing sounds in her head, occasionally sounding like birds chirping.  Id. at 56.  Dr. Mathie diagnosed A.A. with auditory hallucinations, dizziness/lightheadedness, and migraine headache.  Id.  The onset of these buzzing sounds was a few years ago.  Id.  Most often, the buzzing sounds came from A.A.'s left forehead area.  Id.  Usually episodes lasted one to three minutes, but, most recently, an episode lasted an hour when she was in the school library.  Id.  She had some dizziness recently.  Id.  A.A.'s mother was very concerned that A.A. had a possible auditory predisposition for an eventual seizure disorder.  Id.  A.A. had been developing headaches over the past year with symptoms similar to migraines.  Id.  A.A. said that fluorescent lights and loud noises often precipitated a migraine headache.  Id.

On May 18, 2011, A.A. saw pediatrician Dr. John H. Genrich.  Id. at 50.  A.A. fell at school on May 17, 2011.  Id.  Since then, she complained of dizziness, body aches, nausea, and being off balance, but she did not have vomiting.  Id.  She had a headache both during and after the fall.  Id.  A.A. had a history of migraines.  Id.  Dr. Genrich diagnosed head injury, anxiety, and dizziness.  Id.  When A.A. fell, she hit the right side of her forehead but did not lose consciousness.  Id.  She complained of nausea but ate a large dinner last night and this morning had breakfast.  Id.  She complained of being dizzy, but had a history of dizziness in the past.  Id.  Dr. Genrich commented that A.A.'s affect was difficult to ascertain.  Id. at 52.  He could not tell how much of her complaints were related to her prior difficulties versus what was acute.  Id.  Nothing in A.A.'s neurological examination was particularly concerning or related to her fall.  Id.

On June 7, 2011, A.A. returned to Dr. Genrich at the request of Dr. Anne Stratton of the Complex Concussion Clinic for further evaluation.  Id. at 48.  A.A.'s fall could have been the result of syncopal episodes.  Id.  Dr. Genrich's diagnosis was vertigo, syncope, concussion, and anxiety.  Id.  On physical examination, A.A. seemed to have good balance.  Id. at 49.  A.A.'s mother said that, sometimes, A.A. had to lean on her to walk because she was so dizzy.  Id.  A.A. was angry that day and her mother said she was quite volatile because a cousin's parents were getting a divorce.  Id.  Dr. Genrich thought A.A. might have Asperger's syndrome.  Id.

On June 20, 2011, A.A. went to the University of Colorado Hospital and saw Dr. Stephen P. Case.  Med. recs. Ex. 9, at 11.  A.A. had a recent fall at school, head trauma, and possibly a concussion, on May 17, 2011.  Id.  A.A. was initially dizzy and had impaired gait.  Id.  She had emotional and cognitive dysfunction.  Id.  She was seen at the TCH concussion clinic and was scheduled for an EEG.  Id.  There was a question of a peripheral vestibular disorder.  Id.  A.A. had a history of migraine headaches and dizziness.  Id.  On physical examination, the doctor found no evidence that A.A. had a peripheral vestibular hypofunction.  Id. at 12.  Her history was most consistent with benign recurrent vertigo of childhood, which was a migraine variant.  Id.

4

On March 2, 2012, A.A. saw pediatrician Dr. Mathie, who wrote that A.A. had had an intense year following a head injury and concussion.  Med. recs. Ex. 10, at 132.  She also had headaches and was seen frequently at Children's Hospital.  Id.  Dr. Mathie diagnosed A.A. with anxiety, migraine not otherwise specified, sensory modulation dysfunction, and, according to A.A.'s cardiologist, vasovagal syncope.  Id.  Dr. Mathie notes that A.A.'s mother called the pediatric office and various specialists 29 times since A.A.'s last well child visit recounting A.A.'s detailed mild symptoms.  Id.  Dr. Mathie also notes that A.A. remained "VERY" (Dr. Mathie's capitalization) sensitive to touch, and exceedingly sensitive to pain with exaggerated reactions to the lightest touch.  Id.  A.A. was referred to the Child Development Unit at CHC for further evaluation, raising the possibility of Asperger's syndrome,[2] but A.A.'s mother had not scheduled an appointment there.  Id.  Moreover, A.A.'s mother had no interest in occupational therapy for A.A. or for other therapies.  Id.  Dr. Mathie discussed A.A.'s sensory integration disorder with A.A.'s mother in the past, and referred A.A. to Dr. Lucy Miller,[3] but the family never pursued Dr. Mathie's recommendation.  Id.  A.A. often had changing memories of her symptoms, making evaluations of her condition more complicated.  Id.  Dr. Mathie notes that A.A. had continued significant issues with sensory overload and sensory processing difficulties. Id. at 136.  Dr. Mathie encouraged A.A. to have occupational therapy regarding her sensory issues because Dr. Mathie feared that A.A.'s difficulties were compromising her socially.  Id. at 137.  (Dr. Mathie's fears were substantiated subsequently when A.A. retreated from the world.) A.A. received her first Gardasil vaccination.  Id.

### Post-vaccination records

On April 3, 2012, A.A. saw Dr. AnneMarie Latch at AfterOurs Urgent Care.  Med. recs. Ex. 8, at 11.  (This is the first medical record after A.A. received her first Gardasil vaccination a month earlier on March 2, 2012.)  A.A. fell outside and injured her right forearm.  Id.  She had no other complaints at this time.  Id.  She did not have headache, weak limbs, or fatigue.  Id. (Although petitioner alleges that A.A. was unable to walk steep inclines at a zoo on March 26, 2012, Pet. at 1 and ¶ 3, A.A. made no complaints to Dr. Latch one week later of weak limbs or fatigue.)

On December 2, 2012, A.A. returned to Dr. Latch, complaining of a left ear ache since the morning.  Id. at 13.  A.A. did not have generalized pain, fatigue, malaise, headache, or shortness of breath.  Id. at 13-14.  She had no wheezing or diminished breath.  Id. at 14.  (This is two months after A.A.'s third Gardasil vaccination on October 8, 2012.)

---

[2] Asperger's syndrome is a pervasive developmental disorder resembling autistic disorder, being characterized by severe impairment of social interactions and by restricted interests and behaviors, but lacking the delays in development of language, cognitive function, and self-help skills that additionally define autistic disorder.  It may be equivalent to a high-functioning form of autistic disorder."  Dorland's Illustrated Medical Dictionary 1821-22 (32d ed. 2012).

[3] Dr. Lucy Jane Miller is founder and director of the Sensory Processing Disorder Foundation located in Denver and runs the STAR center in Denver.  SPD Foundation, Founder, www.spdfoundation net/aboutus/founder/ (last visited May 5, 2015); SPD Foundation, Board of Directors, http://www.spdfoundation.net/aboutus/board/ (last visited May 5, 2015).

On October 3, 16, and 23, 2013 and November 7 and 13, 2013, A.A. saw social worker Sue Coffey at ComPsych, who diagnosed A.A. with adjustment disorder with anxiety.  Med. recs. Ex. 7, at 3.

On June 12, 2013, eight months after A.A.'s third Gardasil vaccination, A.A. saw pediatrician Dr. Mathie.  Med. recs. Ex. 10, at 21.  A.A.'s mother was concerned about A.A.'s emotions during menstruation.  Id.  In addition, A.A. had frequent urination and shortness of breath.  Id.  A.A. had dizziness and difficulty standing although cardiology had evaluated her in the past and said she had a totally normal examination and evaluation.  Id. at 22.  A.A. had difficulty breathing at times.  Id.  Dr. Paul Stillwell evaluated her earlier this year, but A.A. was uncooperative.  Id.  A.A. was moody and irritable.  Id.  She had vasovagal syndrome although she had a normal cardiac evaluation.  Id. at 24.  She had sensory modulation dysfunction.  Id. at 25.  She had few friends.  Id.  Dr. Mathie's diagnosis was urinary frequency due to dysfunctional voiding.  Id. at 26.  A.A. was not completely finished voiding each time she went to the toilet.  Id.  A.A.'s dizziness was due to poor fluid intake and a low salt diet despite instructions to the contrary.  Id.  Her past full cardiac evaluation was totally normal.  Id.  Dr. Mathie instructed her again to increase her fluids and salt intake, but A.A. continued to refuse Dr. Mathie's instruction.  Id.  She had perceived shortness of breath but she had a normal pulmonary evaluation several months ago.  Id. at 27.  A.A. was uncooperative with spirometry.  She was uncooperative with Dr. Mathie here once again.  She had possible vocal cord dysfunction in the past, but her family had not sought the recommended therapies.  Dr. Mathie's plan was to encourage once again the importance of increased fluids**,** but A.A. remained resistant to fixing her medical issues, but rather continued to complain.  Id.

On October 29, 2013, A.A. returned to Dr. Mathie, complaining of a sudden onset of dizziness, confusion, headache, and vision changes following rapid position change.  Id. at 12.  Dr. Mathie noted that A.A. had been having similar issues for several years following her concussion.  Id.  A.A.'s blood pressure was 100/56.  Id.  Dr. Mathie's diagnosis was migraine with vertigo, migrainous dizziness, and postural hypotension.  Id.  A.A. said she had shivering when her headache started.  Id.  She did have an appetite for lunch that day.  Id. at 13.  On physical examination, A.A. was sitting on the examination table emotionless and not smiling.  Id. at 15.  Dr. Mathie was concerned that A.A. was developing some antisocial behaviors, perseverating on her many illnesses, wanted to do home schooling, and missing much school this year because of her illnesses.  Id.  Dr. Mathie noted A.A. was very sensitive to many things including posture changes, headaches, allergies, environmental exposures, and stress.  Id.

On March 31, 2014, A.A. saw Dr. Gratia L. Meyer, Ph.D., who wrote a Psychotherapy Intake Note stating A.A. was depressed, withdrawn, isolated from her peers, and not attending high school.  Med. recs. Ex. 2, at 1.  A.A. had POTS, migraines, auditory processing difficulties, negative thinking, poor recent memory, distractible attention, delusions of grandeur, and poor judgment.  Id.  She was hypersensitive to light, odors, and high-pitched and loud noises.  Id.  A.A. was not motivated to attend school or study at home.  Id.  A.A.'s mother had migraines for 10 years and brain surgery.  Id.  Dr. Meyer's diagnosis was major depressive disorder, single

episode, borderline personality disorder, POTS, educational problems, and family problems.  Id.

On April 7, 2014, A.A. returned to Dr. Meyer.  Id. at 5.  A.A.'s mother did not accept Dr. Meyer's diagnosis of major depression.  Id.  A.A.'s mother had brain surgery and experienced migraines for the past 10 years.  Id.  A.A.'s parents and A.A. were afraid that A.A. would go through the same thing.  Id.  A.A. refused a referral to a doctor for an antidepressant.  Id.  A.A. made no progress with individual psychotherapy and parental counseling.  Id.

On April 21, 2014, A.A. returned to Dr. Meyer, complaining of increased migraines and depression.  Id. at 8.  A.A. was miserable when both parents were at home because they argued.  Id.  She felt people were too loud.  Id.  She requested ear buds from her parents, but they denied her request.  Id.  A.A.'s father was angry because he cannot play the drums while A.A. is in the house.  Id.  In answer to a questionnaire, A.A.'s mother wrote that A.A. had therapy in the first grade for less than one year for her handwriting.  Id. at 10.  A.A. currently had difficulty running.  Id.  A.A. had speech problems from the ages of two to eleven years.  Id.  A.A. has difficulty with sound, light, touch, smell, and taste.  Id. at 11.  A.A.'s mother wrote that A.A. had teenage angry outbursts, was fearful of spiders and social interactions, and was an only child.  Id. at 12.  A.A.'s mother had brain surgery when A.A. was three years and one month old.  Id. at 14.  A.A.'s mother wrote that A.A. had an auditory processing disorder due to a cleft palate and frequent ear infections and would come home exhausted every day from school due to her effort to understand her teachers.  Id. at 23.  She did not enjoy socializing at school, but she had a group of friends.  Id.  A.A. changed schools, but had great difficulty with the constant running expected there and did not fit in socially.  Id.  A.A. did not make one friend that year.  Id.  A.A.'s mother had intense migraines from when A.A. was three to thirteen years old.  Id.

On April 29, 2013, A.A. saw pediatrician Dr. Emily Granath as a new patient.  Med. recs. Ex. 3, at 6.  A.A. had chronic migraine and POTS.  Id.  Her migraines have some association with menstruation.  Id.  Stress was a trigger.  Id.  There is a family history of migraine.  Id.  She also has auditory processing disorder.  Id.  On physical examination, A.A. did not have any myalgias, arthralgias, limb weakness, or numbness. Id. at 7.  She had dizziness.  Id.  She had surgery in the past to repair a cleft palate and many ear tube replacements.  Id.

On January 16, 2014, A.A. saw Dr. Carol A. Foster, director of the University of Colorado Denver Balance Laboratory, who found that A.A. had an absent VEMP (vestibular evoked myogenic potentials) in her left ear.  Med. recs. Ex. 9, at 14.  A.A. had a long history of migraines, dizziness, middle ear disease, cleft palate, and auditory processing disorder.  Id.  Dr. Foster's diagnosis was post-concussion syndrome, migraine, dizziness, and postural dizziness.  Id. at 16.  In summary, Dr. Foster wrote, A.A. had a history of chronic daily dizziness and migraine headaches brought on after a concussion.  Id.  Her migraine exacerbated her post-concussive dizziness, which also can cause chronic daily dizziness.  Id.  As A.A. recovered from the concussion, the migraine was becoming a greater trigger for her dizziness.  Id.  On top of that, A.A. was very thin with a low blood pressure and her mother gave her an extremely low sodium diet with a high water intake.  Id.  The mother preferred to avoid migraine prophylactic medicines.  Id.  Dr. Foster's plan was for A.A. to drink fluids such as Gatorade and fruit or

vegetable juices instead of only water, and to liberalize her sodium intake.  Id.  A.A. had had migraines since age three.  Id. at 17.  These migraines would present as confusion and occurred five times a year.  Id.  They became painful when A.A. was about ten years old.  Id.  Bad ones occurred once a year.  Id.  She had photophobia and phonophobia with them as well as nausea.  Id.  A.A.'s mother had migraine with aura.  Id.  A.A. has never taken a daily prophylactic medication for migraines because her mother prefers to avoid this.  Id.  A.A.'s mother was following an extremely low sodium diet and, consequently, so is A.A.  Id.  A.A. was unable to stand for more than a few minutes without feeling nauseated or about to pass out.  Id.  A.A. was oriented with good memory and attention.  Id.  She was able to give a clear, concise history.  Id.  A.A. was able to tandem gait without using touch support.  Id.  Dr. Foster opined that A.A.'s absent left VEMP probably had no clinical significance.  Id. at 18.

On May 6, 2014, A.A. saw social worker Ronald M. Trasky, referred from ComPsych.  Med. recs. Ex. 5, at 10.  A.A.'s mother stated A.A. was having emotional distress associated with POTS.  Id.  Her emotional symptoms might include anxiety, confusion, and anger with her parents about the severity of her disorder.  Id.  A.A.'s father believed A.A.'s mother, a stay-at-home parent, was enabling A.A.  Id.  A.A. placed a lot of the blame on her father for her current distress.  Id. at 11.  A.A.'s mother stayed at home and was with A.A. most of the day and catered to A.A.'s every whim, whereas A.A.'s father was very structured and found it difficult to accept A.A.'s constant complaining and moodiness.  Id.  A.A.'s mother is somewhat enmeshed with her daughter and has somatic complaints (traumatic brain injury due to a car accident) that adds to the overall dysfunction and misunderstandings in the household.  Id.

On June 2, 2014, A.A. returned to social worker Trasky, stating her father was going out of his way to avoid her.  Id. at 7.  He talked loudly and continued to say rough things.  Id.  His teasing was mean.  Id.  He did not like her video games with shooting.  Id.

On June 25, 2014, A.A. returned to Dr. Granath for a follow-up.  Med. recs. Ex. 3, at 10.  A.A. saw a cardiologist on May 5, 2014 who diagnosed her with autonomic dysfunction and started her on a high salt and fluid diet.  Id.  She had physical therapy on May 5, 2013 to strengthen her muscles and posture and treat her kyphosis.  Id.  She saw a psychologist on March 31, 2014 who diagnosed her with major depressive disorder.  Id.  She saw a neurologist on May 21, 2014 who had her on Amitriptyline for eight weeks.  Id.  A.A. also had weekly acupressure.  Id.  Dr. Granath's diagnosis was multiple chronic somatic symptoms including headache, dizziness, and nausea.  Id. at 12.  At this time, her cardiologist felt that her symptoms were not consistent with POTS but rather with a vasovagal etiology.  Id.

On July 9, 2014, A.A. saw Tanya Pratkelis at Zephirus Health who is a massage therapist.  Med. recs. Ex. 6, at 1.  On that day, as well as July 15 and 21, August 4 and 13, and September 9, 2014, Ms. Pratkelis supposedly worked on various organs, including A.A.'s brain, by massage.  Id.

On July 10, 2014, A.A. returned to social worker Trasky.  Med. recs. Ex. 5, at 8.  A.A. stated her day-to-day memory was not very good.  Id.  Social worker Trasky said he had done as

much as he could to alleviate A.A.'s anxiety.  Id.  Her parents were going to seek an energy healer to reintegrate A.A.'s body and spirit.  Id.  In summation, social worker Trasky stated A.A. was very guarded about her mental state and medical condition while her mother interpreted most of A.A.'s communication with Mr. Trasky.  Id. at 2.

On December 5, 2015, A.A. saw Dr. Kortney R. Mason, who noted in A.A.'s medical history that she had vasovagal syncope.  Med. recs. Ex. 10, at 4.

## DISCUSSION

To satisfy her burden of proving causation in fact, petitioner must prove by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.'"  Althen v. Sec'y of HHS 418 F.3d 1274, 1278 (Fed. Cir. 2005).  In Althen, the Federal Circuit quoted its opinion in Grant v. Secretary of Health and Human Services, 956 F.2d 1144, 1148 (Fed. Cir. 1992):

> A persuasive medical theory is demonstrated by "proof of a logical
> sequence of cause and effect showing that the vaccination was
> the reason for the injury [,]" the logical sequence being supported
> by a "reputable medical or scientific explanation[,]" i.e., "evidence
> in the form of scientific studies or expert medical testimony[.]"

418 F.3d at 1278.

Without more, "evidence showing an absence of other causes does not meet petitioners' affirmative duty to show actual or legal causation."  Grant, 956 F.2d at 1149.  Mere temporal association is not sufficient to prove causation in fact.  Id. at 1148.

Petitioner must show not only that but for Gardasil vaccine, A.A. would not have had a panoply of complaints, but also that Gardasil was a substantial factor in causing A.A.'s complaints.  Shyface v. Sec'y of HHS 165 F.3d 1344, 1352 (Fed. Cir. 1999).

In the instant action, all of A.A.'s symptoms began before she received Gardasil vaccination.  Despite petitioner's affidavit, adopted verbatim in petitioner's petition, A.A. had no unusual complaints after any of her three Gardasil vaccinations that differed from the complaints that are extant throughout her pre-vaccination records.  Her first post-vaccine medical visit on April 3, 2012 was for an injury to her right forearm in a fall.  She did not complain about being unable to climb a steep incline the week before, as petitioner alleges in the petition.  The doctor noted A.A. had no other complaints, plus no headache, no weak limbs, and no fatigue.  Similarly, there are no particular complaints after the second and third Gardasil vaccinations.  Her next medical visit is June 12, 2013, eight months after her third Gardasil vaccination.  A.A. had no particular complaints that would signify anything was markedly different from her constant complaints.

The Vaccine Act does not permit the undersigned to rule for petitioner based on her claims alone, "unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1).  In the instant action, none of petitioner's medical records substantiate her claim of causation.  Moreover, petitioner has not filed an expert medical opinion substantiating her claims.

The evidence shows that A.A. and her mother refused to follow the directions of various doctors to keep A.A. well-hydrated with adequate sodium intake.  As Dr. Mathie presciently warned, failure of the parents to have A.A. evaluated for Sensory Processing Disorder (the current name for Sensory Integration Disorder) seems to have resulted in A.A.'s withdrawal from the world.  Their failure similarly to have A.A. evaluated for possible Asperger's syndrome was also a rejection of their doctors' recommendations.  Thus, A.A.'s worsening behavior appears to be a direct consequence of her and her mother's failure to take appropriate actions to deal with illnesses she has likely had since early childhood.

The undersigned **GRANTS** petitioner's Motion for a Decision Dismissing Her Petition and **DISMISSES** this case for petitioner's failure to prove by a preponderance of the evidence the matters required in the petition.  42 U.S.C. § 300aa-13(a)(1).

## CONCLUSION

This petition is **DISMISSED**.  In the absence of a motion for review filed pursuant to RCFC, Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

Dated: <u>July 6, 2015</u>                                         <u>/s/ Laura D. Millman</u>
                                                                                    Laura D. Millman
                                                                                    Special Master

---

[4] Pursuant to Vaccine Rule 11(b), entry of judgment can be expedited by each party, either jointly or separately, filing a notice renouncing the right to seek review.